THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KARL MARTIN, Defendant-Appellant.

First District (5th Division)   No. 85—1154

Opinion filed October 24, 1986.

PINCHAM, J., dissenting.

Terrence P. LeFevour and Samuel V.P. Banks, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Paula M. Carstensen, and William J. Hielscher, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Following a stipulated bench trial in the circuit court of Cook County, defendant was found guilty of two counts of possession of a controlled substance with intent to deliver, two counts of possession of a controlled substance, and one count of possession of cannabis (Ill. Rev. Stat. 1983, ch. 56½, pars. 1401(c), 1402(b), 704(b)). He was then sentenced to concurrent terms of 24 months' probation and assessed a fine and court costs in the amount of $900. Defendant now appeals from this judgment, contending solely that the court erred in denying his request for an evidentiary hearing on his motion to quash the search warrant and suppress the evidence obtained therefrom.

The evidence presented at trial by way of stipulation established that if Chicago police officers Richard Rowan and P. Flynn were called to testify they would state that about 11 p.m. on November 24, 1982, they executed a search warrant which authorized a search of defendant and apartment 3E in the building located at 7040 South Euclid in Chicago. At that time and place, they recovered a variety of substances, which chemical analysis and examination revealed to be 4.81 grams of heroin, 6.96 grams of cocaine, assorted codeine and Valium tablets, and 6.97 grams of cannabis sativa. They also recovered $10,000 in cash and a triple-beam scale from the apartment, and two keys from defendant, which matched the front door of the apartment. Defendant was then arrested and charged with the offenses described above.

Prior to trial defendant filed a motion to quash the search warrant and suppress the evidence seized, alleging that the search warrant was invalid because it did not particularly describe the premises to be searched or materials to be seized; that the complaint for the search warrant did not set forth sufficient facts to justify a finding of probable cause for the warrant to issue; that the complaint alleged facts which were false and were known to be so by the officer-affiant when he signed the complaint, or that they were made in reckless disregard of the truth. In addition, defendant denied the acts ascribed to him in the complaint and attached to his motion the search warrant which authorized the search of himself and the premises on Euclid based on the complaint of Officer Rowan, and the complaint for a search warrant sworn to by Officer Joseph Burke for the premises at 6203 South Seeley in Chicago.

From the record we learn that the parties ascertained that separate complaints for search warrants had been filed by Officers Rowan and Burke for defendant at separate locations and that successive warrants were issued on November 24, 1982; it appears, however, that only the warrant authorizing the search of the Euclid premises was executed. Defendant then filed an amended motion to quash and suppress, in which he alleged the insufficiency of the facts in each document to support a finding of probable cause and asserted the falsity of the facts alleged therein. He denied the allegations of narcotics trafficking attributed to him and requested the court to grant him a hearing.

Defendant also attached to his amended motion the search warrants and corresponding complaints for warrants pertaining to each location. The complaint of Officer Rowan shows that he represented to the issuing judge that on November 24, 1982, he had a conversation with a cooperating individual whom he had known for a year, and who, in the past few months, had given him information regarding narcotics activity on three occasions. On each of these occasions, Rowan recovered substances which proved positive for narcotics after laboratory testing. On this day his informant advised him that Karl Martin, whom he described as a "5-foot 10-inch, medium-complected, 30-year-old black male," was selling heroin from apartment 3E at 7040 South Euclid. The information stated that on that day he had accompanied Martin to the Euclid apartment and there purchased a $50 package of heroin in the form of brown powder from him. Martin took this powder from a plastic bag containing about 2½ ounces of the substance; the informant knew that it was heroin because when he inhaled it he received the same reaction which he had experienced in the past two

years when he used heroin. He further stated that Martin gave him the telephone number of the apartment where he purported to be living and told him that he could call him anytime he was not at the workhouse on Seeley. The informant also told him that when he left the apartment, Martin was still in possession of two ounces of heroin. Officer Rowan further stated that during this conversation he learned that Karl Martin was the same person whom he had arrested in 1981 and that he ascertained that the telephone number given to the informant was a nonpublic registry in the name of Isaac Hunter at the Euclid address.

The complaint of Officer Burke was based on information received from a cooperating individual whom he had known for approximately four months. During this time, the informant had furnished him information relating to narcotics on three separate occasions which resulted in raids where controlled substances were recovered. On November 24, 1982, the informant told him that he had been purchasing heroin from Karl Martin, whom he described as above, adding that Martin weighed approximately 165 pounds. The informant told Burke that he had been making his purchases in the second-floor south apartment in the building located at 6203 South Seeley and that he had met with Martin there on November 23, 1982. On that occasion Martin asked the informant how much "stuff" he wanted; the officer noted in his complaint that, among drug users, "stuff" commonly referred to heroin. The informant then purchased a $30 bag of tan powder which Martin brought from another room and measured from a plastic bag into a tinfoil packet. When he left, Martin told him to return when he needed more, and, at that time, the informant noted that Martin was still in possession of an ounce of the same powder which he had purchased. The informant also reported that when he inhaled a portion of his purchase he received the same feelings which he had previously received during his two-year use of heroin.

Based on this information and the description given by the informant, a record check was conducted. Through it the officer ascertained that Martin had previously been arrested, and the informant then identified a photograph of him as the same person who had sold him the heroin at the Seeley address.

Arguments were heard on defendant's motion on March 19, 1985, after which the court commented that it found each warrant sufficient on its face and, if it were not for the unique situation presented by the simultaneous issuance of two warrants for the same person at different premises, no further comment would be required and the motion would be dismissed. The court then observed, however, that the business re-

portedly was transacted on separate days, and that although the information in the complaints and their interrelationship could have been stated more clearly by the officers, the complaint for a search warrant for the Euclid address, which was at issue, comported with the statutory and constitutional requirements for a search warrant. Accordingly, the court denied defendant's request for an evidentiary hearing on the matter and the motion itself.

Defendant now appeals this sole ruling; he has not raised any question concerning the sufficiency of the evidence on which he was subsequently convicted or the sentence which was imposed on those convictions by the court. The only question before us, then, is whether defendant was entitled to an evidentiary hearing on his motion to quash the search warrant and suppress the evidence seized thereto.

■ In *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, the United States Supreme Court set forth a limited exception to the general rule that a defendant is precluded from attacking the veracity of the statements contained in the affidavit for a search warrant. (*People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.) Under this exception a defendant is entitled to an evidentiary hearing in those instances where he makes a "substantial preliminary showing" that a false statement knowingly and intentionally, or with reckless disregard of the truth, was included by the affiant in the warrant affidavit and the allegedly false statement is necessary to the finding of probable cause. (*People v. Verdone* (1985), 107 Ill. 2d 25, 479 N.E.2d 925, citing *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.) To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine; there must be allegations of deliberate falsehoods or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. *People v. Martine* (1985), 106 Ill. 2d 429, 435, 478 N.E.2d 262.[1]

■ A review of the record in the instant case shows that defendant has not sustained this burden. His challenge consists mainly of denials of the allegations contained in the warrant affidavit and the negative inferences which he asserts arise from the simultaneous issuance of two warrants for the same person at two separate locations. In support of his position, he asserts that the information provided in the affidavits came from known drug users and was not independently cor-

---

[1]In *Martine*, our supreme court sustained the trial court's denial of a search warrant because the defendant's affidavit showed nothing more than her desire to engage in discovery and to cross-examine the involved officer.

roborated by either police officer, maintaining that these circumstances cast doubt on the veracity of the informants. He also maintains that the situation is illustrative of the "hit-and-miss" type of approach to law enforcement which is prohibited by the fourth amendment, that Officer Rowan's conclusion that the person who was allegedly in the Euclid apartment with the informant was the same person whom he previously arrested is unsupported in the record, and that this fact and the fact that the telephone number was registered to another establishes at least a reckless disregard of the truth on the part of the officer. We disagree.

Initially, we note that the *Franks* court did not contemplate holding routine hearings upon a denial of the matters alleged in the warrant complaint (*People v. Coleman* (1980), 91 Ill. App. 3d 646, 415 N.E.2d 553), and, accordingly, mere denials by a defendant of facts alleged in the complaint have been held insufficient in themselves to trigger an evidentiary hearing (*People v. Born* (1983), 113 Ill. App. 3d 449, 447 N.E.2d 426). In the instant case the denials filed by defendant do not admit of any exception to the principle announced in *Franks*, and we therefore deem them insufficient to support his request for hearing.

In addition, pursuant to *Franks* it is the veracity of the affiant-officer, rather than the informant, which is at issue and may be impeached (see also *People v. Rodriguez* (1983), 119 Ill. App. 3d 575, 456 N.E.2d 989), and that defendant's allegations must be accompanied by an offer of proof specifically pointing out the portion of the affidavit which is claimed to be false and be accompanied by a statement of supporting reasons (*People v. Brumfield* (1981), 100 Ill. App. 3d 382, 426 N.E.2d 1012). Here, defendant's allegations appear to challenge the information provided by the informant; they do not categorically contradict those made by the officer. (See *People v. O'Neill* (1985), 135 Ill. App. 3d 1091, 482 N.E.2d 668.) In this respect, we distinguish this case from *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269, cited by defendant in support of his argument, where defendant's affidavit contradicted the observations reported by the officer-affiant concerning the presence of defendant's car in front of his apartment at a certain day and time when defendant was purportedly out of the State. (See *People v. Verdone* (1985), 107 Ill. 2d 25, 479 N.E.2d 925.) In contrast, defendant here appears to rely principally on the circumstances of the case involving the issuance of two warrants for the same person at two different locations and negative inferences on the officer's credibility which arise therefrom. See *People v. Abata* (1985), 136 Ill. App. 3d 57, 482 N.E.2d 1119.

The record shows, however, that unlike the situation in *Garcia*, the information contained in the officers' affidavits was based on tips supplied by cooperating individuals concerning narcotics activity by defendant during a 24-hour period. They show that on November 23, 1982, defendant allegedly sold heroin to an informant from the premises on Seeley, while on November 24, 1982, he reportedly sold a bag of heroin to an informant from the Euclid address. We find it noteworthy, as did the trial court, that the affidavit pertaining to the Euclid address contained a reference to the workhouse on Seeley. After commenting on the uniqueness of the case, the court observed:

"I do note that in the one [complaint] which is now the subject matter of the Euclid address search warrant, [it] does indicate the 'Seeley address was the workhouse.'

I am mindful from my recall and my experience in Branch 57 that sometimes distributors will use one house as a distribution house and have several points of distribution other than to protect their safe house, if you will, for the main supply of drugs."

Thus, we find no merit in defendant's assertion that there are negative inferences arising from the situation itself which warrant an evidentiary hearing.

■ Moreover, mere assertions do not give rise to an inference of improper conduct on the part of the officer and here, where defendant failed to demonstrate in any manner that the officer knew or should have known that the information provided by the informant was false (*People v. Martine* (1985), 106 Ill. 2d 429, 478 N.E.2d 262) or that he acted in reckless disregard of the truth when he relayed that information in his complaint for a search warrant (*People v. George* (1984), 126 Ill. App. 3d 1, 466 N.E.2d 1242), no evidentiary hearing was required.

Additionally, the officer's conclusion that the person described by the informant was the same person whom he had previously arrested, even if incorrect, would not mandate an evidentiary hearing, for it does not establish deliberate falsity on the part of the officer, and negligence or innocent mistake are also insufficient. (*People v. Abata* (1985), 136 Ill. App. 3d 57, 482 N.E.2d 1119.) In any event, if this statement were excised from the affidavit, it would not invalidate the warrant for there was more than enough material remaining to establish probable cause for its issuance. *People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.

In sum, we agree with the findings of the trial court that the Euclid complaint for search warrant comports with the statutory and constitutional requirements for a search warrant and is valid on its face, notwithstanding the unusual circumstances surrounding its issuance.

Accordingly, and for the reasons set forth above, we conclude that the trial court's dismissal of defendant's request for a *Franks*-type evidentiary hearing was not manifestly erroneous, and we affirm its judgment. Pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, we grant the State's request that defendant be assessed $50 as costs for defending this appeal and incorporate it as part of our judgment.

Judgment affirmed.

SULLIVAN, P.J., concurs.

JUSTICE PINCHAM, dissenting:

I dissent. In my judgment the trial court erred and did not employ the proper legal standard in denying the defendant's request for an evidentiary hearing on his motion to quash the search warrant and suppress the evidence obtained in execution thereof.

The record establishes that Richard Rowan and Joseph Burke were partners in the Chicago police department. On November 24, 1982, at 9 p.m. they appeared before a judge and each presented a complaint for a search warrant. The complaint for the search warrant presented by Officer Rowan prayed that a search warrant issue to search:

"the person of a M/B known as Karl Martin, dob 27, Mar. 53 5'10 165 lbs. med. comp. IR # 429294 and 7040 S. Euclid apt. 3e. Chicago Cook County Illinois ph # 324-0761."

The complaint for the search warrant presented by Officer Burke prayed that a search warrant issue to search:

"the person of Karl Martin, M/B dob 27, Mar. 53 5'10 165 lbs. med. comp. and 2nd fl. south apt. located at 6203 S. Seeley Chgo., Ill. Cook County."

The pertinent allegations of Officer Rowan's complaint to establish probable cause for the issuance of the warrant for the search of Karl Martin and the 7040 South Euclid premise were as follows:

"Officer Richard Rowan #8993 had a conversation with a Cooperating Individual who stated that a M/B known to the C.I. as Karl Martin was approx. 30 5'10 and med. comp. was selling heroin from the 3rd fl. apt at 7040 Euclid with a phone number of #324-0761. This conversation took place on 24, Nov. 82 and during it this C.I. related the following; on 24, Nov. 82 this C.I. met with Karl Martin and went with Karl Martin to 7040 S. Euclid apt. 3E and during the conversation with Martin the C.I. purchased a fifty dollar pkg. of heroin from Karl Martin while in the apt. 3e at 7040 s. Euclid. This heroin was in the form of brn.

powder, and Martin had produced from a plastic bag which contained approx. 2½ ounces of brn. powder. This the C.I. stated was in fact heroin due to the fact that the C.I. received the same kind of high action from snorting the brn. powder as the C.I. has received in the past from snorting heroin which this C.I. has done weekly for over two years. The C.I. stated while in the apt. Karl Martin gave this C.I. the phone number to his apt. and told the C.I. that this is where he's living and the C.I. could call him anytime he wasn't at the work house on Seeley, when the C.I. left Karl Martin's apt at 7040 s. Euclid the C.I. stated Martin was still in possession of approx. 2 ounces of heroin. during my conversation with this C.I. it was learned that this Karl Martin is the same Karl Martin that I had arrested for possession of Controlled substance on 19, Apr. 81. A check of Illinois Bell Telephone records revealed that the ph.# of 324-0761 was a non-pub reg. to 7040 Euclid apt. 3E to a Isaac Hunter. A check of police records revealed the above IR# 429294 for Karl Martin and his DOB. This C.I. is the same C.I. I have known for over one year and who over the past few months has given my true and correct information in regards to narcotic traffic on three occasions."

The pertinent allegations of Officer Burke's complaint to establish probable cause for the issuance of the warrant for the search of Karl Martin and the 6203 S. Seeley premise were as follows:

"Officer Joseph P. Burke #8188 *** had a conversation with a cooperating individual on November 24, 1982 who stated that this C/I has been purchasing heroin from a subject the C/I knows as Karl J. Martin M/B 5'10" tall, 165 lbs, medium complexion inside of the 2nd fl. south apartment in the building have known the C/I for approximately four months and during this time this C/I has furnished information relative to narcotic activity on three separate occasions ***.

The C/I further stated that on 23 November 82 he was inside on the 2nd Fl. apartment south in the building located at 6203 S. Seeley Chgo., Cook County, Illinois and met with Karl J. Martin who asked the C/I how much stuff the C/I wanted. *** The C/I states that the C/I told Karl J. Martin that the C/I wanted a thirty dollar bag. The C/I states that the C/I then handed Karl J. Martin $30.00 USC and watched as Karl J. Martin walked into another room and returned holding a plastic bag containing approximately an ounce of tan powder. The C/I states that Karl J. Martin then measured a small amount of this tan powder from

this plastic bag and wrapped the measured portion into a tin foil packet, handing it directly to the C/I telling the C/I that the C/I could return when the C/I needed more. The C/I states that when the C/I left the 2nd Fl. apartment south at 6203 S. Seeley Chgo., Cook County, Illinois that the subject Karl J. Martin was still in possession of the same plastic bag containing approximately an ounce of the same powder purchased.

The C/I states that when returning home the C/I took a small quantity of this tan powder purchased from Karl J. Martin and snorted it receiving the same high and similar feelings as when the C/I had snorted heroin in the past based on approximately two years experience using heroin. Based on this information and the description given by the C/I of Karl J. Martin being a Male Black 5'10" tall 165 lbs. medium complection a record check was made with the CPD Identification section and revealed that Karl J. Martin M/B/ DOB 27 Mar 53 has been arrested and assigned IR#429294. This person being the same person as the subject who had sold the tan powder to the C/I at 6203 S. Seeley Chgo., Il. Cook County.

On November 24, 1982 a photograph on the subject of the subject Karl J. Martin IR#429294 was shown to the C/I who at this time positively identified this subject as the same person the C/I purchased the $30.00 bag of tan powder from inside of the 2nd Fl. south apartment at 6203 S. Seeley Chgo., Cook County, Illinois."

Rowan and Burke subscribed and swore to their respective complaints, and the judge ordered that a search warrant issue for 7040 South Euclid and that another search warrant issue for 6203 South Seeley. The search warrants issued, and the court clerk assigned number 82-1-003936 to the 7040 South Euclid warrant and number 82-1-003937 to the 6203 South Seeley warrant.

A search of the 7040 South Euclid premises by Rowan and Burke revealed the narcotic drugs which the information charged the defendant, Karl Martin, with illegally possessing on November 24, 1982. The search warrant for the 6203 South Seeley premises was not executed nor was it returned unexecuted.

The defendant filed a motion under *Franks v. Delaware* (1978), 483 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, to quash the search warrants, to suppress the narcotics as evidence that were seized from 7040 South Euclid, and for an evidentiary hearing to challenge the veracity of the sworn allegations in each officer's complaint. In this motion the defendant denied the acts attributed to him in the complaints and as-

serted that Rowan and Burke knew that the acts were deliberately false and that they recklessly disregarded the truth. As additional grounds for his motion, the defendant relied on the similarity and duplicity of the allegations of the complaints, their simultaneous presentation to the same judge, the successive issuance of the two search warrants, the execution and return of only the 7040 S. Euclid warrant, and the officers' failure to execute the 6203 S. Seeley warrant.

Regarding the similarity and duplicity of the allegations of the officer's complaints, the defendant asserted, in essence, that if the cooperating individual to whom Rowan and Burke referred were different persons, the probabilities were extremely unlikely that both those cooperating individuals would go to Rowan and Burke on the same day and give each officer the same height, weight and complexion description of the defendant, or relate to them in practically identical language and circumstances two narcotics purchases which took place on succeeding days at different addresses. It would also be unlikely, defendant urged, that each cooperating individual would relate that the powder was tan, in a plastic bag, from which each observed the seller take the purchased narcotics, and that tan powder remained in the plastic bag, which each cooperating individual observed the seller possess upon his departure from the premises. The allegation in the officers' complaint that both cooperating individuals had snorted heroin for two years and had previously given each officer reliable information on three separate occasions was also highly improbable, defendant stated.

Defendant then endeavored to persuade the trial court that to believe that the foregoing probabilities occurred would require a mental euphoria that not even the most potent narcotic drug could induce. The defendant further urged that if the cooperating individual to whom Rowan and Burke referred were the same individual, then the beforementioned improbabilities were even greater. The defendant said that comparison of Rowan's and Burke's allegations, the defendant's denials of the acts attributed to him in the complaints, and the defendant's accusation that Rowan and Burke knew that the acts attributed to him were false and were made with a reckless disregard for the truth entitled him to an evidentiary hearing to challenge the veracity of their allegations. The defendant also urged that the allegations were fabricated and concocted to enable the officers to search two premises, in which the officers merely suspected narcotics might be found, without probable cause for the issuance of a search warrant to search either premise.

The defendant's contentions find support in the persuasive dissent of Justice Schaefer in *People v. Mitchell* (1970), 45 Ill. 2d 148, 258

N.E.2d 345, which ultimately became the law on this subject. Justice Schaefer called these kinds of complaints " 'boiler plate' affidavits" which, because of their similarity and number, "show an absence of probable cause." (45 Ill. 2d 148, 158, 258 N.E.2d 345.) Justice Schaefer took the position that a defendant has the right to an evidentiary hearing to controvert the facts of a complaint for a search warrant to establish probable cause after a warrant, valid on its face, had been issued and executed. Justice Schaefer stated:

> "In an atmosphere in which there is widespread concern about narcotics problems it is difficult for a court to enforce constitutional guarantees at the instance of one who is unquestionably guilty. But the constitutional provisions are directed at potential abuses by a tyrannical government and those provisions should not, in my opinion, be so diluted in order to secure convictions in narcotics and gambling cases that they can no longer afford protection against the operations of a Hitler type government." 45 Ill. 2d 148, 156, 258 N.E.2d 345.

Following *Mitchell,* the Supreme Court of the United States in *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, this court in *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269, and most recently, the Supreme Court of Illinois in *People v. Martine* (1985), 106 Ill. 2d 429, 478 N.E.2d 262, held that a defendant in a criminal proceeding has the right under the fourth and fourteenth amendments to the Constitution of the United States, subsequent to the *ex parte* issuance and execution of a search warrant, to challenge in an evidentiary hearing the truthfulness of the sworn statement relied upon to establish probable cause for the issuance of the warrant. The Supreme Court held in *Franks:*

> "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment *** requires that a hearing be held at the defendant's request." *Franks v. Delaware* (1978), 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2675.

Clearly, in my opinion, the defendant in the instant case made a substantial preliminary showing that false statements knowingly and intentionally, or with reckless disregard for the truth, were included in the complaints for the search warrants. He was entitled to controvert the alleged false statements in an evidentiary hearing. The trial court erred in denying him that right.

The trial court also erred when it did not employ the proper legal standard, but instead used an improper criterion, in determining that the defendant was not entitled to an evidentiary hearing. Under *Franks, People v. Martine* (1985), 106 Ill. 2d 429, 478 N.E.2d 262, and *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269, the proper legal standard to determine whether a defendant is entitled to an evidentiary hearing is whether the defendant has made a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, is included in the complaint to establish probable cause. The trial court in the case at bar looked instead within the four corners of the complaint and determined that it was valid on its face and denied the defendant a hearing. This was not the proper legal criterion for determining whether the defendant was entitled to an evidentiary hearing.

In denying the defendant's motion to quash the search warrants and for an evidentiary hearing, the trial court stated:

"I reviewed each of the search warrants separately for each of the addresses, Seeley and Euclid, and *it appears from my review that each warrant would stand on its own from the basis of the four corners of the instrument, the credibility of the CI [Cooperating Individual] and the basis for the information and the reliability thereof.*

\* \* \*

I am dealing with, as I understand the State's posture, only the Euclid address warrant because that's where the contraband was found \*\*\*.

The question is can it stand on all fours? It appears that the Euclid Street address complaint for search warrant is valid on its face \*\*\*.

I am duty bound to find it does comport with the statutory and constitutional requirements for a search warrant. It does pass mustard. I would therefore have to respectfully deny your motion—

—to quash the Euclid Street complaint for search warrant.

MR. BANKS: Your Honor, would the Court make a ruling as to our request respectfully, on the Franks Motion.

Are you denying the Franks?

THE COURT: I respectfully deny your Franks Motion on both basis [*sic*]." (Emphasis added.)

It is clear from the trial court's remarks that it did not employ the proper legal criterion in deciding the defendant's *Franks* motion for an evidentiary hearing. The formula was not whether each warrant

"would stand on its own from the basis of the four corners of the instrument," as the trial court stated. The trial court stated further, "The question is can its stand on all fours?" This was not the question under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, *People v. Martine* (1985), 106 Ill. 2d 429, 478 N.E.2d 262, and *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269. The question also was not whether the complaint for the search warrant "was valid on its face," nor was the question whether the warrant "comport[ed] with the statutory and constitutional requirements for a search warrant." The question that should have been asked was whether the defendant made a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the complaint.

The trial court, in effect, found that the defendant made a substantial preliminary showing when the court stated, in denying the *Franks* motion:

"So if not for the *uniqueness* of which you speak, Mr. Banks, I would not be giving you second thought \*\*\*.

*While it may raise my eyebrows also that the same parties being sought at two separate addresses that is a first for me, notwithstanding my more than two decades on the bench.*
\* \* \*

The business as I read then are on two separate dates, one day apart. The party has been identified most specifically in the Euclid Street, in the Euclid complaint.

I agree with the defense I cannot ascertain that the CI [Cooperating Individual] is not the same person or is the same person. There is no way of discerning it from the warrant and there is no other information.
\* \* \*

\*\*\* [I]t appears that the Euclid Street address complaint for search warrant is valid on its face notwithstanding *the raising of the eyebrows which you give import to and which I agree with* \*\*\*." (Emphasis added.)

The "uniqueness" of the allegations in the complaints, and the raising of the trial judge's eyebrows for the first time in his 20 years on the bench, was a substantial preliminary showing by the defendant, which entitled him to an evidentiary hearing.

For the foregoing reasons, I would reverse the trial court and remand the cause with directions to grant the defendant an evidentiary hearing to controvert the allegations of the complaints for the search warrants.