NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 210389-U

NO. 4-21-0389

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 21, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| RANDALL D. ROBERSON, | ) | No. 13CF901 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted the Office of the State Appellate Defender's motion to
        withdraw as counsel and affirmed the trial court's judgment as no issue of
        arguable merit could be raised on appeal.

¶ 2         Defendant, Randall D. Roberson, appeals the trial court's first-stage dismissal of

his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1

*et seq.* (West 2020)). This court appointed the Office of the State Appellate Defender (OSAD) to

represent defendant. OSAD moved to withdraw as counsel, arguing defendant's appeal presents

no potentially meritorious issues for review. We grant the motion and affirm the trial court's

dismissal of defendant's postconviction petition.

¶ 3                                I. BACKGROUND

¶ 4         On July 9, 2013, law enforcement took defendant into custody on six counts:

unlawful criminal drug conspiracy (720 ILCS 570/405.1 (West 2012)); armed violence (720

ILCS 5/33A-2(a), 33A-3(a) (West 2012)); being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2012)); unlawful possession of a controlled substance with intent to deliver, with prior unlawful-possession-of-controlled-substance conviction (720 ILCS 570/401(a)(2)(B) (West 2012)); and two counts of unlawful delivery of a controlled substance (720 ILCS 570/401(c)(2) (West 2012)). On July 26, 2013, defendant asked for a continuance to consult with an attorney.

¶ 5            On August 2, 2013, defendant asked for a public defender. The trial court granted the request and continued the cause without objection to August 14, 2013, for a preliminary hearing. On August 14, 2013, the court found probable cause to believe defendant had committed a felony and continued the cause without objection for a pretrial hearing on September 11, 2013. On that date, the parties agreed to continue the matter, with no reason given. On October 23, 2013, defense counsel told the court there was a codefendant in the case the State might wish to give priority to and agreed to a "one time" continuance.

¶ 6            On November 20, 2013, citing a lack of communication from counsel, defendant filed a motion to remove his defense counsel and be appointed a new public defender. As part of his allegations, defendant alleged he had been incarcerated for four months and counsel's failure to communicate left him in limbo regarding his right to a speedy trial.

¶ 7            On November 27, 2013, only the State appeared, and the trial court stated defense counsel recently had a surgical procedure and could not physically attend court. The court stated if there were any delays, they would be for that reason. On December 4, 2013, defense counsel told the court the parties were still in discovery, and they were continuing the case by agreement. The court advised counsel of defendant's pleading and stated, "[I]f counsel reviews it and thinks he needs a *Krankel* hearing, I'll leave it up to you to advise the Court." Counsel never did so.

¶ 8            On January 8, 2014, defense counsel told the trial court defendant wanted to get a trial date set but counsel had concerns about issues with codefendants in the case and a conflict with another hearing date. On the motion of the defense, the court continued the matter to January 23, 2014. On that date, the matter was again continued at the request of defense counsel because of outstanding issues concerning the status of counsel for codefendants.

¶ 9            On February 13, 2014, defense counsel told the trial court defendant wanted a trial date and "prefers not to sit there another 30 days waiting on counsel for somebody else." Defense counsel asked for a date in April 2014, and the court noted its availability from March 31, 2014, through April 4, 2014. However, defense counsel stated he was "trying to be out of the country" at that time. The court then set trial for May 5, 2014, "[o]n motion of defendant."

¶ 10            On April 21, 2014, defendant filed a *pro se* a written speedy-trial demand, stating he asked his counsel to move for a speedy trial and counsel was constantly asking for continuances without his consent. Defendant also stated he had seen or talked to counsel only twice over nine months. He further wrote he was not allowed to go to pretrial hearings, so when counsel appeared, defendant was unable to have any say about the continuances sought by defense counsel or the State. The trial court struck the pleading because defendant had representation.

¶ 11            On May 5, 2014, the State sought a continuance. The trial court noted, "[s]ome of this stuff needs to get resolved." The court continued the matter over defendant's objection. However, defendant did not demand trial. On May 13, 2014, the case was continued by agreement because defense counsel had yet to obtain "some video." Defense counsel asked for a trial date the first week in June, stating he would be away the rest of June. The State responded it had eight trials in June, one of which both the State and the court noted "has to go." Defense

counsel then conferred with defendant and told the court defendant would waive a jury trial and ask for a bench trial. After a discussion of the wisdom of seeking a bench trial when video evidence had not yet been turned over from the State and based on the court's availability, defense counsel asked for a new status date to view the video and decide. The court continued the matter to May 20, 2014, by agreement. On that date, defendant told the court he wanted a jury trial. The court set a pretrial date for May 28, 2014. On that date, defense counsel stated, "We need a trial date," and trial was set for July 22, 2014, without objection.

¶ 12 On July 22, 2014, the State sought to continue the matter. When asked if there was an objection, defense counsel stated: "Normally I would, but in this case—I got the other one. It's much older. It's set for tomorrow. This is much longer than a one-day trial. However, my client just informed me that he would like to waive jury and get a bench trial date." Defendant then waived his right to a jury, and the trial court transferred the case to another judge for a bench trial.

¶ 13 On September 12, 2014, the State filed a motion to continue because it had not received all the lab results. Defense counsel objected but did not demand trial. The parties indicated a date in November would not violate the statutory speedy-trial provisions, and the trial court set trial for November 13, 2014. On November 12, 2014, the court continued the trial at defense counsel's request so he could file a motion to suppress.

¶ 14 On December 3, 2014, defendant filed a motion challenging the search warrant and seeking a hearing under *Franks v Delaware*, 438 U.S. 154 (1978). He argued the complaint used to secure the warrant contained falsehoods or a reckless disregard for the truth. Defendant challenged various allegations in the complaint, including asserting the recordings showed a codefendant, Matthew Anderson, obtained items, including cocaine, from defendant's residence,

and a cellular phone call was placed to defendant when no recording substantiated the claim. He also argued a witness denied buying cocaine from defendant, while another would plead her fifth -amendment rights if she was called to testify. On January 8, 2015, the trial court denied defendant's motion. The court found defendant failed to meet his burden of making a substantial preliminary showing law enforcement included statements known to be false or statements made with reckless disregard for the truth. The court set the trial for February 20, 2015.

¶ 15　　　　　On January 15, 2015, the State requested a different date because of a witness's unavailability. Defense counsel objected. The trial was rescheduled for March 25, 2015. On January 16, 2015, the State moved to release defendant on a recognizance bond because it discovered there would be a statutory speedy-trial issue with the March trial date. The trial court granted the motion.

¶ 16　　　　　On March 25, 2015, the trial was continued to April 29, 2015, at defense counsel's request. Counsel stated, "It took a little bit to track [defendant] down" and there was "a little bit" counsel needed to get ready for trial. After additional delays, all either on motion of defendant or by agreement, trial was set for July 15, 2015. On that date, a new public defender appeared and sought a new trial date because counsel had met defendant for the first time that day. The cause was continued on defendant's motion for an August 19, 2015, trial. Between that date and February 1, 2016, the cause was again continued multiple times by agreement or at defense counsel's request. On February 1, 2016, a bench trial was held.

¶ 17　　　　　On the first day of trial, the State amended count III to a charge of unlawful possession of a weapon by a felon, alleging defendant, who had been convicted of a felony, knowingly possessed on or about his person or in his own abode a firearm, a .22-caliber revolver. 720 ILCS 5/24-1.1(a) (West 2012). The State explained it was amending the charge because the

prosecutor realized the current armed habitual criminal charge listed a prior conviction as being from Macon County, when in fact, the prior conviction was from Sangamon County. Defense counsel did not object. The next day, the State informed the trial court it had received the correct certified copy of conviction for the Sangamon County case and was ready to proceed on the original count, which was never dismissed but just amended. The State moved to withdraw the amended count III and proceed on the original armed habitual criminal charge. The court allowed the State to reinstate the original charge. Defense counsel objected but conceded there was no impact on his defense of the case.

¶ 18    At trial, several detectives testified as to their roles in the investigation and surveillance of defendant's distribution of cocaine with codefendant Anderson and evidence defendant possessed a weapon. Further recitation of the facts of the bench trial are unnecessary for resolution of OSAD's motion to withdraw. The trial court found defendant guilty of five charges and sentenced defendant to an aggregate term of 30 years' incarceration.

¶ 19    Defendant appealed, arguing multiple errors, including: (1) the State failed to prove defendant guilty of criminal drug conspiracy beyond a reasonable doubt, (2) the trial court erred in denying defendant's motion challenging the search warrant, (3) the court erred in allowing the State to proceed on the original charge of being an armed habitual criminal after it was amended to unlawful possession of a weapon by a felon, and (4) defendant was denied his right to a speedy trial. We affirmed in part and vacated in part. *Roberson*, 2020 IL App (4th) 160830-U, ¶ 133.

¶ 20    On the sufficiency of the evidence argument concerning the criminal drug conspiracy charge, this court held, when viewing the evidence in the light most favorable to the prosecution, the circumstantial evidence established more than a simple buyer-seller arrangement

between defendant and Anderson. Instead, it established an agreement or conspiracy to possess and sell cocaine. Thus, defendant was proven guilty beyond a reasonable doubt. *Roberson*, 2020 IL App (4th) 160830-U, ¶ 91.

¶ 21 Addressing whether the trial court erred in denying defendant's motion challenging the search warrant, this court found the issue forfeited because defense counsel did not raise the error in a posttrial motion. Further, appellate counsel forfeited any plain-error argument because his argument was simply a bare assertion error had occurred. *Roberson*, 2020 IL App (4th) 160830-U, ¶ 110. The issue of whether the court erred in allowing the State to reinstate the original armed habitual criminal charge after it was amended to an unlawful possession of a weapon by a felon was also forfeited because appellate counsel cited to no authority in support of his general assertion of error. *Roberson*, 2020 IL App (4th) 160830-U, ¶ 114.

¶ 22 Regarding defendant's speedy-trial claim, this court noted appellate counsel simply asserted defendant was in custody more than 120 days and " 'no exceptions' " were noted. Appellate counsel did not develop the argument and failed to provide record citations, authority, or argument in support of the speedy-trial claim. Accordingly, this court held the argument was forfeited for failure to comply with Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018). *Roberson*, 2020 IL App (4th) 160830-U, ¶ 112.

¶ 23 On March 29, 2021, defendant filed a *pro se* postconviction petition alleging: (1) the State failed to prove him guilty beyond a reasonable doubt of criminal drug conspiracy, denying him due process and equal protection when, after his trial, a codefendant was acquitted of the conspiracy charge by a different judge; (2) ineffective assistance of counsel based on violations of his statutory and constitutional rights to a speedy trial; and (3) ineffective assistance

of appellate counsel for forfeiting his claims. Defendant included as an exhibit a notarized letter addressed to the trial court, dated October 21, 2014, expressing concerns his counsel was neglecting the case, requesting unnecessary continuances, and refusing to seek a speedy trial as requested by defendant. He included a notarized affidavit stating the allegations in his petition were true to the best of his knowledge.

¶ 24        On June 7, 2021, the trial court summarily dismissed the petition as frivolous and patently without merit. Defendant appealed. OSAD moved to withdraw as counsel. We denied the motion without prejudice because counsel did not address defendant's constitutional speedy-trial claim or ineffective assistance of counsel in relation to that claim. *People v. Roberson*, 2022 IL App (4th) 210389-U. On November 29, 2022, OSAD filed a new motion to withdraw, including the constitutional speedy-trial claim.

¶ 25                              II. ANALYSIS

¶ 26        OSAD again moves to withdraw. Counsel for OSAD asserts he (1) read the record on appeal, (2) reviewed the facts and applicable law, and (3) discussed the case with another attorney. OSAD concludes an appeal in this case would be without arguable merit. We granted defendant leave to file additional points and authorities, and he has responded. The State has declined to file a brief.

¶ 27        We agree this appeal presents no nonfrivolous issues. First, OSAD submits it would be frivolous to argue the trial court failed to comply with the procedural requirements of the Act when it dismissed the petition. OSAD then submits the underlying claims in the petition are frivolous and patently without merit.

¶ 28        The Act provides a remedy to criminal defendants who demonstrate a violation of their constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2020). At the first stage of a

postconviction proceeding, the trial court must determine whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020). "[A] *pro se* petition seeking postconviction relief under the Act for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12, 912 N.E.2d 1204, 1209 (2009). A petition lacks an arguable factual basis when it is based on a fanciful factual allegation, such as one that is clearly baseless, fantastic, or delusional. *Hodges*, 234 Ill. 2d at 16-17. A petition lacks an arguable legal basis when it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16.

¶ 29    At the first stage, the allegations in the petition, when taken as true and liberally construed, must present the gist of a constitutional claim. *People v. Hatter*, 2021 IL 125981, ¶ 24, 183 N.E.3d 136. "Thus, to survive summary dismissal, a petitioner is only required to include a limited amount of detail and need not present formal legal arguments or citations to legal authority." *Hatter*, 2021 IL 125981, ¶ 24. "An allegation in a postconviction petition must be based on factual allegations and not mere conclusory statements." *People v. Ivy*, 313 Ill. App. 3d 1011, 1019, 730 N.E.2d 628, 637 (2000). The petition must be both (1) verified by affidavit and (2) supported by "affidavits, records, or other evidence supporting its allegations," or, if not available, the petition must explain why. 725 ILCS 5/122-2 (West 2020); *People v. Collins*, 202 Ill. 2d 59, 65, 782 N.E.2d 195, 198 (2002). If a postconviction petition is found to be frivolous or patently without merit, a trial court may summarily dismiss it within 90 days of its filing. *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001). Our review of the first-stage dismissal of a postconviction petition is *de novo*. *People v. Dunlap*, 2011 IL App (4th) 100595, ¶ 20, 963 N.E.3d 394.

¶ 30 Here, OSAD correctly notes the trial court dismissed the petition as frivolous and patently without merit within the 90-day period. OSAD next submits all underlying claims in the *pro se* postconviction petition are frivolous and patently without merit. We agree.

¶ 31 A. Sufficiency of the Evidence

¶ 32 We agree it would be frivolous for OSAD to argue defendant was denied due process and equal protection based on insufficient evidence to convict him of conspiracy. As OSAD correctly notes, this claim is nothing more than a reasonable doubt argument couched as a constitutional issue in defendant's petition. Sufficiency of the evidence claims are not cognizable in postconviction petitions. See *People v. Franzen*, 251 Ill. App. 3d 813, 822, 622 N.E.2d 877, 886 (1993). Further, the issue is *res judicata* as it was already decided on direct appeal. *People v. Blair*, 215 Ill. 2d 427, 443, 831 N.E.2d 604, 614-15 (2005).

¶ 33 Defendant's allegation concerning Anderson's acquittal does not change the determination he was proven guilty beyond a reasonable doubt. The acquittal of one codefendant has no bearing on the guilt of a codefendant, regardless of the nature of the evidence presented. See *People v. Gharst*, 122 Ill. App. 3d 1, 5, 460 N.E.2d 813, 816 (1984). The criminal drug conspiracy statute also provides that it shall not be a defense to criminal drug conspiracy that the person with whom the defendant had conspired was ultimately acquitted. 720 ILCS 570/405.1(b)(4) (West 2012). Thus, the fact codefendant Anderson was acquitted of his criminal drug conspiracy charge by a different judge does not entitle defendant to an acquittal on the same charge.

¶ 34 B. Speedy Trial

¶ 35 OSAD next submits defendant's speedy-trial claims lack merit. Defendant asserted multiple claims, including the question of whether he was denied his constitutional right

to a speedy trial. Although labeled as a constitutional speedy-trial claim, defendant first argued he was not brought to trial within 120 days, thus presenting a statutory claim. See 725 ILCS 5/103-5(a) (West 2012). As, such, he argued counsel was ineffective for failing to file a motion to discharge and appellate counsel was ineffective for forfeiting the issue. Specifically, he initially alleged the total number of continuances or delays attributable to the State amounted to 139 days. He also noted he made multiple complaints about trial counsel, attempted to demand trial *pro se*, and asserted counsel refused to move for a speedy trial when defendant requested it. He also alleged his constitutional right to a speedy trial was violated because the State's delay in bringing him to trial was unjustified and presumptively prejudicial where the charges in this case were not complicated and the evidence against him was readily available to the State.

¶ 36    This court reviews claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the defendant must show (1) the conduct of trial counsel fell below an objective standard of reasonableness and (2) the deficient performance prejudiced defendant such that a "reasonable probability" exists the result would have been different but for the deficient performance. *Strickland*, 466 U.S. at 687-88, 694. The defendant must satisfy both prongs, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *** that course should be followed." *Strickland*, 466 U.S. at 697.

¶ 37    Claims of ineffective assistance of appellate counsel are judged under the same standard. See *People v. Salazar*, 162 Ill. 2d 513, 521, 643 N.E.2d 698, 702-03 (1994). To establish ineffective assistance of appellate counsel, defendant must demonstrate (1) the failure to raise an issue was objectively unreasonable and (2) but for the failure to raise the issue, the

trial court's ruling would have been reversed. *People v. Flores*, 153 Ill. 2d 264, 283, 606 N.E.2d 1078, 1087 (1992).

¶ 38      In Illinois, a criminal defendant has both a constitutional and statutory right to a speedy trial. See U.S. Const., amends VI, XIV; Ill. Const. 1970, art I., § 8; 725 ILCS 5/103-5(a) (West 2012). Although section 103-5(a) implements the constitutional right to a speedy trial, the statutory and the constitutional rights "are not coextensive." *People v. Phipps*, 238 Ill. 2d 54, 65, 933 N.E.2d 1186, 1193 (2010).

¶ 39      Section 103-5(a) of the Code of Criminal Procedure of 1963, commonly referred to as the Speedy Trial Act, provides, in pertinent part:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2012).

¶ 40      The 120-day speedy-trial period begins to run automatically if a defendant remains in custody pending trial. *People v. Wooddell*, 219 Ill. 2d 166, 174, 847 N.E.2d 117, 122 (2006). "The speedy trial term is computed by excluding the first day and including the last, unless the last day is a Sunday or a holiday, in which case it is also excluded." *People v. LaFaire*, 374 Ill. App. 3d 461, 463, 870 N.E.2d 862, 864 (2007). Any delay occasioned by the defendant within this term will suspend or toll the term for the time for the delay. 725 ILCS 5/103-5(f) (West 2012).

¶ 41        Section 103-5(a) explicitly "places the onus on [the] defendant to take affirmative action when he becomes aware that his trial is being delayed." *People v. Cordell*, 223 Ill. 2d 380, 391, 860 N.E.2d 323, 331 (2006). "A simple request for trial, before any 'delay' is proposed, is not equivalent to an objection for purposes of section 103-5(a)." *Cordell*, 223 Ill. 2d at 391. Instead, to prevent the speedy-trial clock from tolling, section 103-5(a) requires that the defendant object to any attempt to place the trial date outside the 120-day period. *Cordell*, 223 Ill. 2d at 390-91. The defendant can do so by " 'making a written demand for trial or an oral demand for trial on the record.' " *Cordell*, 223 Ill. 2d at 391 (quoting 725 ILCS 5/103-5(a) (West 2002)). While the statute does not mandate the use of any "magic words," it requires some affirmative statement in the record requesting a speedy trial. *Cordell*, 223 Ill. 2d at 391.

¶ 42        If a person is not tried within the statutory speedy-trial term, the person shall be discharged from custody and the charges must be dismissed. 725 ILCS 5/103-5(d) (West 2012); *People v. Woodrum*, 223 Ill. 2d 286, 299, 860 N.E.2d 259, 269 (2006). Subsection (b) of the Speedy Trial Act in turn, creates a 160-day speedy-trial right for persons released on bond or recognizance, and this period begins to run only when the accused files a speedy-trial demand. A defendant who is subject to subsection (b) retains his or her liberty. *Wooddell*, 219 Ill. 2d at 174. Accordingly, the State is given a longer time in which to try the charges than would be available if the defendant were in custody awaiting trial. *Wooddell*, 219 Ill. 2d at 174. To invoke the 160-day period of subsection (b), defendants who are on bail or recognizance must serve the State with a formal demand. *Wooddell*, 219 Ill. 2d at 175.

¶ 43        Here, defendant initially focused on continuances pertinent to the 120-day requirement in his petition. In his response, he argues 161 days passed before he was brought to trial. But, as counsel notes, when continuances requested or agreed to by trial counsel without

any demands for a speedy trial are considered, defendant was released from custody well under the 120-day limit, at 80 days. Once defendant was released, the State had 160 days from the date he demanded trial, unless defendant occasioned the delay. The State calculates 148 days accrued as of March 25, 2015. After examining the record, we agree with the State's calculation. After that date, all continuances were requested by or agreed to by trial counsel, and counsel never specifically demanded a speedy trial.

¶ 44          Defendant attributes to the State time periods after he expressed disagreement with the delays in *pro se* statements or in writing to the trial court. But the decision to seek a continuance is generally a strategic decision asserted by counsel. See *People v. Ramey*, 151 Ill. 2d 498, 523-26, 603 N.E.2d 519, 529-30 (1992). A defendant is bound by his trial counsel's request for a continuance unless the defendant clearly and convincingly objects and asserts his or her right to discharge counsel and proceed to an immediate trial. *People v. Kaczmarek*, 207 Ill. 2d 288, 297, 798 N.E.2d 713, 719 (2003). Defendant here did not do so. Thus, we agree it would be frivolous for OSAD to argue defendant was denied his statutory right to a speedy trial or that counsel was ineffective for failing to move to discharge.

¶ 45          We also agree it would be frivolous for OSAD to argue there is merit to defendant's constitutional speedy-trial claim. There are four factors to be balanced to determine whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the defendant's assertion of the right; (3) the reasons for the delay; and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *People v. Bazzell*, 68 Ill. 2d 177, 182, 369 N.E.2d 48, 50 (1977). "Once the [*Barker*] factors have been considered, 'courts must still engage in a difficult and sensitive balancing process.' " *People v. Crane*, 195 Ill. 2d 42, 60, 743 N.E.2d 555, 566 (2001) (quoting *Barker*, 407 U.S. at 533). Each factor must be weighed

and considered in light of the circumstances of the case as reflected in the record. *Bazzell*, 68 Ill. 2d at 182-83. However, "[a]ll four factors are closely related" and no one factor is dispositive. *Crane*, 195 Ill. 2d at 52. Because "a certain amount of delay is 'inevitable and wholly justifiable' [citation], a speedy-trial inquiry will not be triggered unless the complained-of delay crosses the threshold from ordinary to ' "presumptively prejudicial." ' [Citations.]" *Crane*, 195 Ill. 2d at 52. Thus, the first factor considered is the length of the delay. *Crane*, 195 Ill. 2d at 52.

¶ 46        "In general, courts have recognized a delay approaching one year to be 'presumptively prejudicial.' " *Crane*, 195 Ill. 2d at 52-53 (quoting *Barker*, 407 U.S. at 530-31). A finding of presumptive prejudice, however, does not imply the delay will be found to have actually prejudiced the defendant. Rather, it simply marks the point at which courts deem the delay unreasonable enough to trigger the full *Barker* inquiry. *Crane*, 195 Ill. 2d at 53; *People v. Prince*, 242 Ill. App. 3d 1003, 1008, 611 N.E.2d 105, 109 (1993). The weight accorded the reasons cited by the State for the delay is dependent on the particular circumstances of the case, such that deliberate delays are weighted heavily and negligence is weighted less heavily. *Barker*, 407 U.S. at 531; *Crane*, 195 Ill. 2d at 55. Whether and how a defendant asserts his right is also a factor. *Barker*, 407 U.S. at 531. Finally, in assessing the prejudice factor, courts consider the interests of defendants the speedy-trial right was designed to protect: (1) preventing undue and oppressive incarceration; (2) minimizing the anxiety and concern that accompanies public accusations; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532.

¶ 47        Here, OSAD agrees the length of the delay was presumptively prejudicial. OSAD does not specifically address the effect of a presumptively prejudicial delay on the procedural posture of a first-stage summary dismissal of a postconviction petition, which requires the

defendant to state only the "gist" of a claim. We also recognize the trial court did not discuss the factors pertinent to a constitutional speedy-trial claim. However, as OSAD notes, a significant portion of the delays were attributable to defendant for valid reasons. Most of the continuances were by agreement or on defense motions as the case was prepared for trial. During that time, new defense counsel took over the case. Moreover, the case involved a large-scale criminal drug conspiracy and cocaine distribution operation involving multiple unnamed people, the recovery of drugs from multiple homes, multiple defendants, potential conflict issues, and multiple electronic recordings and video evidence. While defense counsel objected to some of the continuances and defendant filed a *pro se* demand, most of the continuances were without objection, and there were no written trial demands filed by counsel. As previously noted, defendant never sought to discharge counsel and proceed *pro se* to an immediate trial. Most important, there is a lack of evidence in the record of prejudice caused by the delays considering the complicated nature of the case, and defendant did not articulate in his petition or in his response how his defense was impaired by the delay. Indeed, defendant does not address the constitutional speedy-trial claim in his new response at all. Thus, we are unable to give any weight to the prejudice factor.

¶ 48 Based on the totality of the circumstances, we conclude the delays in bringing the case to trial were mostly occasioned by defendant and were excused by the complexity of the ongoing proceedings. Defendant has not asserted facts to show the delays prejudiced his rights. Accordingly, although the delay was presumptively prejudicial, we conclude the lack of merit to the overall claim is apparent, such that the trial court did not err in concluding defendant failed to establish the gist of a claim for ineffective assistance of counsel. As such, we agree with OSAD there is no arguable merit to a claim defendant's constitutional right to a speedy trial was

violated. Accordingly appellate counsel also did not render ineffective assistance by forfeiting the issue.

¶ 49                             C. Challenge to the Search Warrant

¶ 50         We also agree there is no substantive merit to the claim the trial court erred in denying defendant a *Franks* hearing. To establish probable cause for a search warrant, the entirety of the facts and circumstances within the affiant's knowledge when the warrant was sought must be "sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched." *People v. Griffin*, 178 Ill. 2d 65, 77, 687 N.E.2d 820, 829 (1997). In determining whether the necessary probable cause existed when the search warrant was issued, a reviewing court will not substitute its judgment for that of the magistrate. *People v. Kornegay*, 2014 IL App (1st) 122573, ¶ 23, 12 N.E.3d 747. Instead, the court may look at commonsense considerations that are factual and practical. *Kornegay*, 2014 IL App (1st) 122573, ¶ 21. To warrant a hearing under *Franks*, a defendant must make a substantial preliminary showing a knowingly and intentionally false statement was included by the affiant in the warrant affidavit, and show the false statement was necessary to the finding of probable cause. *Franks*, 438 U.S. at 155-56. In addition, when an informant is involved, it is the veracity of the affiant, not the informant, which is at issue and may be impeached. *People v. Martin*, 148 Ill. App. 3d 1061, 1066, 500 N.E.2d 528, 532 (1986). The defendant's attack must "be more than conclusory and must be supported by more than a mere desire to cross-examine; there must be allegations of deliberate falsehoods or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Martin*, 148 Ill. App. 3d at 1065. Moreover, the "substantial preliminary showing" necessary to warrant a *Franks* hearing requires proof

"somewhere between mere denials on the one hand and proof by a preponderance on the other." *People v. Lucente*, 116 Ill. 2d 133, 152, 506 N.E.2d 1269, 1277 (1987).

¶ 51 Here, defendant presented various allegations of deliberate falsehoods or statements showing a reckless disregard for the truth because the video and audio recordings did not conclusively corroborate the events described in the complaint, a witness denied buying cocaine from defendant, and another would plead her fifth amendment rights if she was called to testify. However, as the State argued, even if the points of concern were redacted from the search warrant complaint, it still supported probable cause to search. For example, the complaint included evidence additional law enforcement officers made purchases from defendant and provided information about what they knew about the drug operation allegedly run by defendant and codefendant Anderson. Observations from surveillance during the investigation showed police gave two individuals funds to make purchases of cocaine from defendant, and those individuals returned with cocaine purchased with police funds. In another instance, individuals passed information to the police about cocaine purchases made from the operation and their observations of a large amount of currency and a handgun present at the location. Thus, the defense failed to make a substantial preliminary showing to warrant a *Franks* hearing and defendant suffered no prejudice from appellate counsel's failure to properly preserve a plain-error argument on the issue, as there was no error in the first place.

¶ 52 D. Reinstatement of Armed Habitual Criminal Charge

¶ 53 Finally, we agree with OSAD there is no substantive merit to the claim the trial court erred in allowing the State to reinstate the original armed habitual criminal charge. After the grand jury has returned an indictment, it may not be broadened through amendment except by the grand jury itself. *People v. Ross*, 395 Ill. App. 3d 660, 667, 917 N.E.2d 1111, 1119

(2009). However, amendments to the indictment are permissible "where there is no resulting surprise or prejudice to the defendant or where the record clearly shows that he was otherwise aware of the charge against him." *Ross*, 395 Ill. App. 3d at 667. Indeed, the State may amend even an essential allegation of an indictment when there is no hint of surprise or prejudice to the defendant. *People v. Jones*, 53 Ill. 2d 460, 463-65, 292 N.E.2d 361, 363 (1973). Here, the amendment did not broaden the original charge, and counsel did not object to the amendment. When the State was allowed to reinstate the original charge, which was never dismissed, counsel objected but also admitted the reinstatement had no impact on the defense. Thus, defendant was not surprised or prejudiced by the reinstatement of the original charge, since it was never dismissed and never impacted counsel's defense case. Therefore, we agree with OSAD there is no meritorious argument defendant was prejudiced by appellate counsel's forfeiture of this issue on direct appeal.

¶ 54                                      III. CONCLUSION

¶ 55           For the reasons stated, we grant OSAD's motion to withdraw as counsel and affirm the trial court's judgment.

¶ 56           Affirmed.